**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

| | | |
|---|---|---|
| **KENNETH RAY BILBO** | : | **DOCKET NO. 2:17-cv-0706** |
| **D.O.C. # 355823** | | **SECTION P** |
| **VERSUS** | : | **UNASSIGNED DISTRICT JUDGE** |
| **DARREL VANNOY** | : | **MAGISTRATE JUDGE KAY** |

## REPORT AND RECOMMENDATION

Before the court is a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 by Kenneth Ray Bilbo, who is proceeding pro se in this matter. Bilbo is an inmate in the custody of the Louisiana Department of Public Safety and Corrections and is currently incarcerated at the Louisiana State Penitentiary at Angola, Louisiana. Darrel Vannoy, warden of that facility and respondent in this matter, opposes the petition. Doc. 19.

This petition is referred to the undersigned for review, report, and recommendation in accordance with 28 U.S.C. § 636 and the standing orders of the court. For the following reasons **IT IS RECOMMEDED** that the petition for writ of habeas corpus be **DENIED** and **DISMISSED WITH PREJUDICE**.

### I.
#### BACKGROUND

#### A. *Conviction*

Bilbo was indicted in the Fourteenth Judicial District, Calcasieu Parish, Louisiana, on one count of second degree murder, a violation of Louisiana Revised Statute § 14:30.1, for the death of Roderick "Rocky" Syas on or about January 29, 2007. Doc. 19, att. 2, p. 47; *see State v. Bilbo*,

2010 WL 5027174, at *1 (La. Ct. App. 3d Cir. Dec. 8, 2010) (providing date of killing). Bilbo proceeded to trial by jury and was convicted as charged on September 18, 2009, by a verdict of 10-2. Doc. 19, att. 2, pp. 42, 193–94. He was then sentenced to a mandatory term of life imprisonment without benefit of probation, parole, or suspension of sentence. Doc. 19, att. 4, pp. 128–29.

### B.  Direct Appeal

Bilbo appealed to the Louisiana Third Circuit Court of Appeal raising insufficient evidence as his sole assignment of error. *Bilbo*, 2010 WL 5027174. The court reviewed the claim on the merits and denied relief. *Id.* Bilbo then sought review in the Louisiana Supreme Court, which denied same on September 23, 2011. *State v. Bilbo*, 69 So.3d 1155 (La. 2011). He did not file a petition for writ of certiorari in the United States Supreme Court. Doc. 1, p. 3.

### C.  State Collateral Review

According to the state district court's record, the first filing from the petitioner in that court, after his appeal, is a letter to the clerk of court dated August 30, 2013, and stamped as filed on September 24, 2013. Doc. 19, att. 5, pp. 55–64; *see id.* at 1 (chronological index). In his letter Bilbo references an "original application for post conviction relief currently pending in this Honorable Court since January 3, 2012."[1] *Id.* at 55. He also asserts that he was informed by a family member that a supplement to that application had not been received, and that he was therefore resubmitting it. *Id.* He attached his supplemental application, which he had certified on June 4, 2012. *See id.* at 56–60. In his supplemental application, Bilbo asserted (1) that he was denied due process when the trial court refused the jury's request to review evidence and would not inform them of the penalty for manslaughter and (2) that he received ineffective assistance

---

[1] On the same page he also references an application filed on January 3, 2013. Doc. 19, att. 5, p. 55. Given the subsequent statements by the Third Circuit, however, this appears to be a typographical error.

from his trial counsel when his attorney failed to object to the court's ruling on those requests. *Id.* at 56–59. The trial court issued written reasons and an order on February 19, 2014, addressing only the claims raised in the supplemental application and denying relief as to both. *Id.* at 65–66.

Bilbo then sought review in the Third Circuit, which determined based on "[i]nformation obtained from the Calcasieu Parish Clerk's Office" that the petitioner had initiated post-conviction proceedings on January 3, 2012, as asserted, with a "Memorandum in Support of Post-Conviction Relief," also entitled "Petitioner Requests an Evidentiary Hearing." *Id* at 69. After several months of back and forth, with the Third Circuit ordering the trial court to rule on the original application and the trial court insisting it did not have it, the Third Circuit ordered the trial court to address the claim from the first application, which it summarized as ineffective assistance of counsel based on denial of Bilbo's right to testify on his own behalf. *Id.* at 71–86. The trial court then denied relief without an evidentiary hearing, holding that Bilbo failed to rebut a presumption that he had waived his right to testify. *Id.* at 87–88. The petitioner sought writs in the Third Circuit, which denied same. *Id.* at 90. Finally, he sought review in the Louisiana Supreme Court, which ruled on April 7, 2017. *State ex rel. Bilbo v. State*, 215 So.3d 217 (La. 2017). That court addressed the petitioner's application as follows:

> Denied. Relator fails to show he received ineffective assistance of counsel under the standard of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Relator also fails to carry his burden of proof post-conviction with regard to his claim the district court erred in handling the jurors' requests during deliberations. La.C.Cr.P. art. 930.2.

*Id.* at 218.

### D. Federal Habeas Petition

The instant petition was filed in this court on May 2, 2017, when Bilbo certifies that he placed the pleading in the prison mailing system. Doc. 1, p. 12. Bilbo raises the following claims for relief:

1. His conviction was based on insufficient evidence.

2. He received ineffective assistance of counsel when his attorney prevented him from testifying on his own behalf.

3. He was denied his right to due process when the trial judge refused to allow the jury to review evidence and information relating to manslaughter.

4. Trial counsel rendered ineffective assistance by failing to object when the court denied jury's request for review of evidence and information on penalty for manslaughter.[2]

Doc. 1, att. 2.

## II.
### STANDARDS ON HABEAS REVIEW

### A. Timeliness

Federal law imposes a one-year limitation period within which persons who are in custody pursuant to the judgment of a state court may seek habeas review in federal court. 28 U.S.C. § 2244(d)(1). This period generally runs from the date that the conviction becomes final. *Id.* The time during which a properly-filed application for post-conviction relief is pending in state court is not counted toward the one-year limit. *Id.* at § 2244(d)(2); *Ott v. Johnson*, 192 F.3d 510, 512

---

[2] Petitioner in brief captions this claim as whether his trial counsel was "ineffective in failing to object when the court refused to charge the jury concerning the lesser offense of manslaughter." Doc. 1, att. 2, p. 15. As we discuss *infra*, the court did charge the jury on the lesser offense of manslaughter. A review of petitioner's argument with respect to this claim reveals, however, that his complaint concerns trial counsel's failure to object to the trial court's refusal to answer a question posed during deliberation about what the sentence for manslaughter could be and also includes argument that counsel was ineffective for failing to object to the trial court's ruling on statements and testimony requested by the jury also in deliberation. We have redrafted the title of this claim to more clearly comport with petitioner's argument.

(5th Cir. 1999). However, any lapse of time before proper filing in state court *is* counted. *Flanagan v. Johnson*, 154 F.3d 196, 199 n. 1 (5th Cir. 1998).

A state application is considered pending both while it is in state court for review and also during intervals between a state court's disposition and the petitioner's timely filing for review at the next level of state consideration. *Melancon v. Kaylo*, 259 F.3d 401, 406 (5th Cir. 2001). The limitations period is not tolled, however, for the period between the completion of state review and the filing of the federal habeas application. *Rhines v. Weber*, 125 S.Ct. 1528 (2005). Accordingly, in order to determine whether a habeas petition is time-barred under the provisions of §2244(d) the court must ascertain: (1) the date upon which the judgment became final either by the conclusion of direct review or by the expiration of time for seeking further direct review, (2) the dates during which properly filed petitions for post-conviction or other collateral review were pending in the state courts, and (3) the date upon which the petitioner filed his federal habeas corpus petition.

### B. Exhaustion and Procedural Default

Exhaustion and procedural default are both affirmative defenses that may be considered waived if not asserted in the respondent's responsive pleadings. *E.g.*, *Cupit v. Whitley*, 28 F.3d 532, 535 (5th Cir. 1994). However, the federal district court may also consider both doctrines on its own motion. *Magouirk v. Phillips*, 144 F.3d 348, 357–59 (5th Cir. 1998). Therefore we consider any assertions by respondent under these doctrines, in addition to conducting our own review.

#### 1. Exhaustion of State Court Remedies

The federal habeas corpus statute and decades of federal jurisprudence require that a petitioner seeking federal habeas corpus relief exhaust all available state court remedies before filing his federal petition. 28 U.S.C. § 2254(b)(1); *e.g.*, *Whitehead v. Johnson,* 157 F.3d 384, 387

(5th Cir. 1998). This is a matter of comity. *Ex parte Royall*, 6 S.Ct. 734, 740–41 (1886). In order to satisfy the exhaustion requirement, the petitioner must have "fairly presented" the substance of his federal constitutional claims to the state courts "in a procedurally proper manner according to the rules of the state courts." *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001); *Dupuy v. Butler*, 837 F.2d 699, 702 (5th Cir. 1988). Each claim must be presented to the state's highest court, even when review by that court is discretionary. *Wilson v. Foti*, 832 F.2d 891, 893–94 (5th Cir. 1987). The exhaustion requirement is not satisfied if the petitioner presents new legal theories or entirely new factual claims in support of his federal habeas petition. *Brown v. Estelle*, 701 F.2d 494, 495 (5th Cir. 1983).

In Louisiana the highest court is the Louisiana Supreme Court. *See* LSA–Const. art. 5, § 5(a). Thus, in order for a Louisiana prisoner to have exhausted his state court remedies he must have fairly presented the substance of his federal constitutional claims to the Louisiana Supreme Court in a procedurally correct manner, based on the same general legal theories and factual allegations that he raises in his § 2254 petition.

### 2. *Procedural Default*

When a petitioner's claim is dismissed by the state court based on state law grounds, and those grounds are independent of the federal question and adequate to support the judgment, he may not raise that claim in a federal habeas proceeding absent a showing of cause and prejudice or that review is necessary "to correct a fundamental miscarriage of justice." *Coleman v. Thompson*, 111 S.Ct. 2546, 2553–54, 2564 (1991) (internal quotations omitted). Procedural default exists where (1) a state court clearly and expressly bases its dismissal of the petitioner's constitutional claim on a state procedural rule and that procedural rule provides an independent and adequate ground for the dismissal ("traditional" procedural default) or (2) the petitioner fails

to properly exhaust all available state court remedies and the state court to which he would be required to petition would now find the claims procedurally barred ("technical" procedural default). In either instance, the petitioner is considered to have forfeited his federal habeas claims. *Bledsue v. Johnson*, 188 F.3d 250, 254–5 (5th Cir. 1999). This is not a jurisdictional matter, but instead a doctrine "grounded in concerns of comity and federalism." *Trest v. Cain*, 118 S.Ct. 478, 480 (1997). The grounds for traditional procedural default must be based on the actions of the last state court rendering a judgment. *Harris v. Reed*, 109 S.Ct. 1038, 1043 (1989). To serve as adequate grounds for a federally cognizable default, the state rule "must have been firmly established and regularly followed by the time as of which it is to be applied." *Busby v. Dretke*, 359 F.3d 708, 718 (5th Cir. 2004) (internal quotations omitted).

### C. *General Principles*

When a state court adjudicates a petitioner's claim on the merits, this court reviews the ruling under the deferential standard of 28 U.S.C. § 2254(d). *E.g.*, *Corwin v. Johnson*, 150 F.3d 467, 471 (5th Cir. 1998). That statute provides that a writ of habeas corpus shall not be granted unless the state court's adjudication resulted in a decision that was (1) contrary to clearly established federal law or involved an unreasonable application of that law, or (2) based on an unreasonable determination of the facts in light of the evidence before the state court. 28 U.S.C. § 2254(d). Where a habeas court is faced with an unexplained decision on the merits, it "looks through" that decision to the last related state court decision that provides a relevant rationale and presumes that the unexplained decision adopts the same reasoning. The respondent may rebut the presumption by showing that the unexplained decision most likely relied on different grounds than the reasoned decision below. *Wilson v. Sellers*, 138 S.Ct. 1188 (2018). Our review, however, ultimately encompasses "only a state court's decision, and not the written opinion explaining that

decision." *Maldonado v. Thaler*, 625 F.3d 229, 239 (5th Cir. 2010) (internal quotations omitted); *see also Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) ("The statute compels federal courts to review for reasonableness the state court's ultimate decision, not every jot of its reasoning.") Even if the state court issues a summary denial of the claim, "the habeas petitioner's burden still must be met be showing there was no reasonable basis for the state court to deny relief." *Harrington v. Richter*, 131 S.Ct. 770, 784 (2011).

The first standard, whether the state court's adjudication was contrary to or involved an unreasonable application of clearly established federal law, applies to questions of law as well as mixed questions of law and fact. The petitioner must demonstrate that the state court's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 131 S.Ct. at 786–87. A decision is only contrary to clearly established federal law "if the state court applies a rule that contradicts the governing law set forth [by the Supreme Court], or if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a [contrary result]." *Bell v. Cone*, 125 S.Ct. 847, 851 (2005) (quotations and citations omitted). As the Court recently emphasized, "circuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court.' . . . Nor, of course, do state-court decisions, treatises, or law review articles." *Kernan v. Cuero*, 138 S.Ct. 4, 9 (2017) (internal citation omitted).

The second standard – whether the state court's adjudication was based on an unreasonable determination of the facts in light of the evidence – applies only to questions of fact. It is insufficient for a petitioner to show that the state court erred in its factual determination. Instead, he must demonstrate that the factual determination was objectively unreasonable, a "substantially higher threshold." *Schriro v. Landrigan*, 127 S.Ct. 1933, 1939 (2007). "[A] state-court factual

determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 130 S.Ct. 841, 849 (2010). Instead, a presumption of correctness attaches to the state court's factual determinations and the petitioner must rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### III.
#### LEGAL ANALYSIS

#### A. Timeliness

Bilbo's conviction became final on December 22, 2011, when his time for seeking review in the United States Supreme Court expired. Sup. Ct. R. 13. Only 12 days accrued against § 2244(d)'s time limit before he filed his application for post-conviction relief in the trial court on January 3, 2012, as determined by the Third Circuit. After this application was filed, the time limit remained tolled while his application for post-conviction relief was pending in the state courts, until the Louisiana Supreme Court's decision on April 7, 2017. An additional 25 days then accrued before he filed the instant petition on May 2, 2017, and this matter is therefore timely with only 32 days counted against the one-year limit.

#### B. Exhaustion and Procedural Default

The respondent agrees that all of petitioner's claims above are exhausted and susceptible to federal habeas review. Doc. 19, att. 1, p. 18. We therefore consider all of the claims on the merits below.

#### C. Merits Consideration

##### 1. Sufficiency of evidence

Bilbo first contends that his conviction was obtained based on insufficient evidence. The Third Circuit denied relief on this claim after an examination of the evidence presented at trial. *Bilbo*, 2010 WL 5027174 at *1–*4. The Louisiana Supreme Court then issued a cursory denial of

writs. *Bilbo*, 69 So.3d at 1155. Accordingly, the Third Circuit's opinion is the last opinion on the merits and we look through the Louisiana Supreme Court's decision to that of the Third Circuit in order to determine if habeas relief is warranted.

A defendant's constitutional right to due process is violated when he is convicted of a crime without the state having met its burden of proof on every element of the offense.[3] *Jackson v. Virginia*, 99 S.Ct. 2781, 2787 (1979) (citing *In re Winship*, 90 S.Ct. 1068, 1073 (1970)). Such claims are decided by determining whether, "viewing the evidence in the light most favorable to the prosecution, **any** rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Donahue v. Cain*, 231 F.3d 1000, 1004 (5th Cir. 2000) (internal quotations omitted; emphasis added). Thus, even though state law may require the exclusion of all reasonable hypotheses of innocence, a court on habeas review "may find the evidence sufficient to support a conviction even though the facts also support one or more reasonable hypotheses consistent with the defendant's claim of innocence." *Gibson v. Collins*, 947 F.2d 780, 783 (5th Cir. 1991).

Under *Jackson*, both direct and circumstantial evidence can contribute to the sufficiency of evidence and circumstantial evidence alone may be enough to support the conviction. *Schrader v. Whitley*, 904 F.2d 282, 287 (5th Cir. 1990). The habeas court must defer to the trial court's findings on issues of conflicting testimony and the weight of the evidence, resolving all conflicting inferences and credibility choices in favor of the verdict, and may not substitute its judgment for that of the factfinder's. *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005); *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985). Thus, under the standards of *Jackson* and § 2254,

---

[3] On federal habeas review, a court refers to the substantive elements of the offense as defined by state law. *Weeks v. Scott*, 55 F.3d 1059, 1062 (5th Cir. 1995).

this court's review on sufficiency of evidence claims is "twice-deferential." *Parker v. Matthews*, 132 S.Ct. 2148, 2152 (2012).

The Third Circuit reviewed the testimony of state's witnesses Anthony Weldon, Adolph DeJean, and Raysean Marsh, who testified for the state and claimed that they had seen Bilbo walk off with the victim and then heard gunshots, and defense witness Kermit Redmond, who testified for the defense and claimed that he (Redmond) had instead killed Syas. *Bilbo*, 2010 WL 5027174 at *1–*4. The court determined the jury's choice to credit the testimony of the state's witnesses over that of Redmond was not clearly contrary to the evidence, and thus could not be second-guessed. *Id.* at *4. Bilbo maintains that the Third Circuit's decision represents an unreasonable application of federal law and determination of the facts, in light of Redmond's confession and the fact that the state produced no eyewitnesses to Syas's shooting. Doc. 1, att. 2, p. 7. A claim of insufficient evidence, however, is a mixed question of law and fact. *E.g.*, *Landor v. Cain*, 2014 WL 7342361, at *12 (E.D. La. Dec. 23, 2014) (citing *Maes v. Thomas*, 46 F.3d 979, 988 (10th Cir. 1995)). Therefore we only recommend that relief be granted if the Third Circuit's decision was contrary to or involved an unreasonable application of clearly established federal law.

Under Louisiana law, second degree murder includes "the killing of a human being when the offender has a specific intent to kill or inflict great bodily harm." La. Rev. Stat. § 14:30.1(A)(1). "Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." *Id.* at § 14:10(1).

Bendy Falcon, a corporal with the Lake Charles Police Department, testified that he was dispatched to a boat launch off Fitzenreiter Road on February 1, 2007, after someone had called to report a possible body floating near the wharf in the Calcasieu River. Doc. 19, att. 3, pp. 102–

04. Falcon confirmed the presence of a body and handed the matter over to detectives. *Id.* at 104–06. Zeb Johnson, an investigator from the Calcasieu Parish Coroner's Office, testified that he was called to the boat launch on that date to investigate a suspicious death. *Id.* at 112. There a body with several puncture wounds, which appeared to be bullet holes, was recovered from the water. *Id.* at 114–16. The body was identified as that of Roderick Syas. *Id.* at 121. Dr. Terry Welke, the parish coroner, testified that Syas had died of multiple gunshot wounds. *Id.* at 155–60.

The state's witnesses included, as noted supra, Anthony Weldon, Adolph DeJean, and Raysean Marsh. Weldon testified that the group had come together to celebrate Marsh's birthday. Doc. 19, att. 2, pp. 238–39. Bilbo, DeJean, and their girlfriends first came to meet him at a local bar where he was attending another party, where he admitted that he was drinking heavily. Doc. 19, att. 2, pp. 237–39, 242; doc. 19, att. 3, pp. 17–18. As they were leaving the bar, Bilbo instructed him to get his (Bilbo's) gun from his girlfriend's car. Doc. 19, att. 2, p. 240. Weldon complied and handed the gun to Bilbo. *Id.* at 240–41. From the bar Weldon, Bilbo, and DeJean then rode together to Marsh's house. *Id.* at 241–43. Syas and Marsh met them there, and the group continued to the boat launch on Fitzenreiter Road. *Id.* at 243–46. Weldon stated that the area was secluded and not well-lit, and that he could not recall who suggested stopping there. *Id.* at 245–47. He testified that he, Marsh, and DeJean stayed by the car, drinking and listening to music, while Syas and Bilbo walked toward the boat dock. *Id.* at 246. A few minutes after Bilbo and Syas left, he heard four or five gunshots and then Bilbo returned alone, carrying the gun Weldon had handed him earlier. *Id.* at 247–48. Bilbo told the group that Syas was not coming back and instructed them to get back in the car. *Id.* at 248. When they were in the car, Weldon testified, Bilbo waved his gun around from the driver's seat and said, "Who seen something?" *Id.* at 249. Weldon agreed that he "didn't see [anything]," and Bilbo then started the car and drove away. *Id.* He drove them to a Walgreen's,

where he instructed Weldon to buy some lighter fluid and Weldon complied. *Id.* at 250. They then drove to Weldon's house, where Bilbo went into the backyard and burned the jacket and shoes he had been wearing on Weldon's back porch. *Id.*; Doc. 19, att. 3, p. 11.

Raysean Marsh also testified that the group had gotten together to celebrate his birthday and that they wound up at the boat launch. *Id.* at 43–46. He admitted that he had been drinking and smoking marijuana that night, and stated that Bilbo and DeJean had also smoked marijuana that night. *Id.* at 41, 45. When they got to the boat launch, March stated, Bilbo asked Syas to go talk with him. *Id.* at 47. Marsh started to follow but Bilbo told him to stay put. *Id.* The two headed toward the wharf of the boat launch, where Marsh could no longer see them, and a few minutes later he heard gunshots. *Id.* at 48. Bilbo then ran back to the car, holding his gun, and climbed into the driver's seat. *Id.* at 48–49. Marsh asked him what had happened, and Bilbo pointed the gun at Marsh and said, "[M]ake sure you don't be next." *Id.* at 49. Bilbo then pointed his gun at the other two passengers and also warned them, "[D]on't be next." *Id.* Marsh recalled that the group drove from the boat launch to another friend's house, where Bilbo got rid of his gun, and then to Weldon's house. *Id.* at 50–52. He admitted that he had denied knowing who killed Syas in statements given to police in February 2007, but maintained that his current account – which he had maintained since May 2007 – was correct. *Id.* at 60–78.

Adolph DeJean corroborated the two previous witnesses' accounts of going from a bar to the boat launch, though he was not well-acquainted with the others or familiar with that area of town.[4] *Id.* at 86–89. He also corroborated their accounts of seeing Bilbo walk out of sight with "[t]he guy that's missing" and hearing shots a short time later, before Bilbo returned alone with a gun in his hand. *Id.* at 89–91. When Bilbo got back in the car, DeJean, testified, he pointed the gun

---

[4] DeJean stated that he was from a different part of town. Doc. 19, att. 3, p. 88. He only seemed to know Marsh and Bilbo by name.

at the others and said, "Let's go." *Id.* at 91–92. DeJean recalled that they then went to the house of "the other guy," where he (DeJean) went to sleep. *Id.* at 92–93. He also admitted that they were all drinking, and that he and probably some of the others were smoking marijuana. *Id.* at 89.

The defense's only witness was Kermit Redmond, who was facing other criminal charges in the same court and had sent the court, as well as several other individuals, a letter stating that he had killed Roderick Syas. *Id.* at 185, 202–07. Redmond appeared with counsel and waived his Fifth Amendment privileges. *Id.* at 185–88. He testified that he met Syas at a local recreation center, and that Syas had bought drugs from him. *Id.* at 191–94. Syas then made an appointment with Redmond to buy more drugs from him that night, and Redmond met him in a car parked near the recreation center around 10:00. *Id.* at 195–96. At that point, Redmond testified, Syas pulled a gun on him and ordered him into the car. *Id.* at 196. Syas then drove them to the boat launch, where he ordered Redmond out of the car. *Id.* at 196–98. There Redmond contended that Syas attempted to shoot him, but his gun "clicked." *Id.* at 198. Redmond claimed that he then pulled his own gun on Syas and shot him several times, then dumped the body in the river. *Id.*

As Redmond admitted, he had several prior felony convictions. *Id.* at 200–01. He was currently facing first degree murder charges in another homicide, which occurred on February 4, 2007, and had confessed to that killing. *Id.* at 208–09. He could not recall on what day of the week Syas's murder had occurred, though he remembered that the other murder had taken place on Super Bowl Sunday. *Id.* at 209–10. He admitted that he used two different guns for the respective murders. *Id.* at 218–19. He did not recall that Syas was wearing a do-rag or any jewelry, though the investigator who had assisted with recovery of the body testified that he had been wearing both a do-rag and a stud earring. *Id.* at 228; *see id.* at 126–30. Finally, given his multiple prior felonies, he was aware that he was facing a life sentence under Louisiana's habitual offender laws even if

he was acquitted of first or second degree murder and convicted of the lesser included offense of manslaughter with regards to the other homicide. *Id.* at 216–17. Finally, the state called Marcus McCullough, a detective with the Lake Charles Police Department, as an impeachment witness. *Id.* at 235. McCullough testified that he had received multiple letters from Redmond relating to the Syas murder, while investigating the other 2007 homicide to which Redmond had confessed. *Id.* at 236. He had then visited Redmond in jail and asked him, "[W]hat's up with these letters? . . . [Y]ou are trying to confess to something, but you can't keep your story straight." *Id.* at 238. Redmond responded that he was "just trying to help a brother out" and refused to say anything more. *Id.*

With the testimony above, the state provided ample support for a verdict of second degree murder. Despite the lack of eyewitnesses to the actual shooting, Weldon, Marsh, and DeJean all testified that they saw Bilbo walk off with Syas, heard gunshots, and then saw Bilbo return alone with his gun in hand. Syas's body was recovered a short time later from the water near that boat launch, with gunshot wounds determined as the cause of death. The witnesses' disagreement as to what exactly Bilbo said when he returned to the car, whether he waved his gun at the group or pointed it at someone in particular, and if/where they stopped before continuing to Weldon's house are insufficient to undermine their testimony as to the events immediately surrounding the shooting. Likewise, Bilbo fails to show that their substance use should have prevented them from being competent witnesses as to the events of that night. Under our doubly deferential standards on sufficiency of evidence review, there is no basis for undermining the jury's decision to credit the testimony of the state's witnesses and discount Redmond's confession, or the Third Circuit's decision to affirm same. Accordingly, Bilbo fails to show adequate error to the Third Circuit's ruling under § 2254(d) and is not entitled to habeas relief on this claim.

## 2. *Ineffective assistance – denial of right to testify*

Bilbo next complains that he received ineffective assistance from trial counsel when that attorney prevented him from taking the stand on his own behalf. The Louisiana Supreme Court addressed both of Bilbo's ineffective assistance claims in brief in its April 2017 opinion, stating "Relator fails to show he received ineffective assistance of counsel under the standard of *Strickland v. Washington* . . . ." *Bilbo*, 215 So.3d at 218. As noted above, under *Wilson v. Sellers* the federal court on habeas review should look through an unexplained state court decision to the last state court decision that does provide a relevant rational and then presume that the unexplained decision adopts the same reasoning. 138 S.Ct. at 1193–96. In this matter, however, the last reasoned decision was not a "one-word order" or otherwise unexplained decision offered as an example in *Wilson*, 138 S.Ct. at 1192. Instead the court singled out the ineffective assistance claims and broadly stated that the petitioner had not met his burden under *Strickland*, infra, rather than adopt the more narrow reasoning of the trial court – that petitioner failed to satisfy *Strickland*'s first prong and show deficient performance by counsel, because he had not demonstrated that counsel prevented him from testifying.[5] *See* doc. 19, att. 5, pp. 87–88. There appears to be no basis for determining that the Louisiana Supreme Court's decision was "unexplained" and applying *Wilson*'s presumption that the Louisiana Supreme Court ruled on the same grounds as the trial court. We therefore treat the high court's decision as the one under § 2254(d) review.

Claims of ineffective assistance of counsel are gauged by the guidelines set forth by the Supreme Court in *Strickland v. Washington*, 104 S.Ct. 2052 (1984). Under *Strickland*, a petitioner must demonstrate: (1) that his counsel's performance was deficient, requiring a showing that the errors were so serious such that he failed to function as "counsel" as guaranteed by the Sixth

---

[5] The Third Circuit, on the other hand, stated "[t]here is no error in the trial court's ruling," presenting a stronger case for looking through that decision to the trial court's reasoning. Doc. 19, att. 5, p. 90.

Amendment, and (2) that the deficiency so prejudiced the defendant that it deprived him of a fair trial. *Id.* at 2064. The first prong does not require perfect assistance by counsel; rather, petitioner must demonstrate that counsel's representation fell beneath an objective standard of reasonableness. *Id.* Judges have been cautioned towards deference in their review of attorney performance under *Strickland* claims in order to "eliminate the potential distorting effect of hindsight." *Rector v. Johnson*, 120 F.3d 551, 563 (5th Cir. 1997) (quoting *Strickland*, 104 S.Ct. at 1065) (quotations omitted). Accordingly, the court should "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*

The second prong requires the petitioner to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 104 S.Ct. at 2055–56. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 2056. In other words, the petitioner must show prejudice great enough to create a substantial, rather than conceivable, likelihood of a different result. *Pape v. Thaler*, 645 F.3d 281, 288 (5th Cir. 2011) (quoting *Cullen v. Pinholster*, 131 S.Ct. 1388, 1403 (2011)). "Both of [Strickland's] prongs must be proven, and the failure to prove one of them will defeat the claim, making it unnecessary to examine the other prong." *Williams v. Stephens*, 761 F.3d 561, 566–67 (5th Cir. 2014).

Louisiana courts treat a denial of the right to testify as a structural error and so do not require defendants to show prejudice under *Strickland* when claiming ineffective assistance based on this issue. *Johnson v. Cain*, 2011 WL 5374132, at *3 (M.D. La. Sep. 20, 2011) (citing *State v. Hampton*, 818 So.2d 720 (La. 2002)). Under federal law, however, a petitioner must still show adequate prejudice by demonstrating that the error "was so serious as to 'render[] the result of the

trial unreliable or the proceeding fundamentally unfair.'" *Id.* (quoting *Bell v. Quarterman*, 2009 WL 2391575, at *1 (5th Cir. 2009)).

Nothing in the record indicates that Bilbo protested when his attorney rested after calling only one witness or that he otherwise made his desire to testify know. *See* doc. 19, att. 3, pp. 234–35. Nor, however, does the record show that the trial court engaged in any colloquy with Bilbo regarding waiver of his right to take the stand. Assuming *arguendo* that Bilbo could show that trial counsel performed deficiently in this regard, he has not demonstrated adequate prejudice. He only asserts, generally, that "[t]he case was sided" and that, by not being allowed to testify, he was prevented from meaningfully testing the state's case. Doc. 1, att. 2, p. 13. Such general allegations cannot suffice, however. Bilbo fails to show how he would have undermined the three eyewitness accounts to circumstances which virtually exclude the possibility of another shooter, or bolstered Redmond's unconvincing confession. Accordingly, he demonstrates no error to the state court's ruling and no right to habeas relief.

### 3.  District Court's denial of jury's request for review of evidence and information on penalty for manslaughter

Under his third claim, Bilbo contends that he was denied his Sixth and Fourteenth Amendment rights to due process and a fair trial when the trial court refused the jury's request during deliberations to review the statements and testimony of state witnesses, as well as their request to be informed on the penalty for manslaughter. Doc. 1, att. 2, pp. 14–15. The respondent argues that the trial court's decision on this claim, which relied in part on Article 793 of the Louisiana Code of Criminal Procedure, is the last reasoned opinion and that the claim is thus subject to procedural default.[6] Doc. 19, att. 1, pp. 27–28. For the reasons stated under the previous

---

[6] Article 793 relates to the use of evidence in the jury room. Therefore the trial court reached the merits of the claim, relying on state law to determine the limits of the judge's discretion, rather than "clearly and expressly bas[ing] its dismissal of a claim on a state procedural rule . . . [that] provides an independent and adequate ground for the

claim, we consider the Louisiana Supreme Court's April 2017 decision to be the one under §
2254(d) review in this matter. There the court stated that Bilbo "fail[ed] to carry his burden of
proof post-conviction with regard to his claim [that] the district court erred in handling the jurors'
requests during deliberations." *Bilbo*, 215 So.3d at 218. Accordingly, the claim was clearly decided
on the merits in the last reasoned state court opinion and we review that decision for its contrariness
to or unreasonable application of clearly established federal law.

Specifically, Bilbo's claim relates to two exchanges between judge and jurors. The jury
retired for deliberations at 12:40 pm on September 18, 2009, and then sent a note at 1:35 pm
requesting to review various items, including (1) Raysean Marsh's statement/testimony and (2)
Anthony Weldon's statement. Doc. 19, att. 2, p. 41. After a discussion with counsel, the court
ordered the jury returned to the courtroom and advised them that they could not have Marsh or
Weldon's statements. *Id.* The jury retired for further deliberation at 1:45 pm and then sent another
note at 3:30 pm, asking what the penalty was for manslaughter. *Id.* at 41–42. After discussion with
counsel, the court responded via note reading, "Can't tell you." *Id.* at 42. The jury then returned
its 10-2 verdict of second degree murder at 4:33 pm. *Id.* Accordingly, we review the decision by
the Louisiana Supreme Court as to both denials.

### a. *Denial of requested testimony and statements*

The petitioner contends that "when it comes to juries viewing . . . statements . . . there is
no prohibition against their request."[7] Doc. 1, att. 2, p. 14. On the contrary. Under Louisiana law,

---

dismissal." *Bledsue v. Johnson*, 188 F.3d 250, 254 (5th Cir. 1999). Additionally, this article only applied to the court's decision on the jurors' request to review testimony and not to their request to be informed of the penalty for manslaughter, which the trial court decided in reliance on *State v. Prater*, 337 So.2d 1107 (La. 1976). Thus, the citation to Article 793 would not create a basis for procedural default of the claim, even if we treated the trial court's decision on post-conviction relief as the last reasoned one on this claim.

[7] He relies on *State v. Joseph*, 875 So.2d 1011 (La. Ct. App. 5th Cir. 2004) for this point. That case, however, dealt with the jury's ability to review the jury instructions during deliberations. The jury also requested a copy of the final instructions, and the court responded by recharging the jury as to the portions requested. Doc. 19, att. 2, p. 41. The petitioner does not and has not complained of any denial of due process based on the court's response to that request.

testimony shall not be repeated and written evidence may not be reviewed by the jury during deliberations. La. C. Cr. P. art. 793(A). Accordingly, the court was acting within the limits imposed on it by Louisiana law when it denied the jury's request to review testimony and statements from two witnesses.

States are free to implement rules of evidence and criminal procedure, provided that those procedures do not infringe on a constitutional guarantee. *Burgett v. Texas*, 88 S.Ct. 258, 261 (1967). Bilbo does not explain how the rule itself renders the proceedings fundamentally unfair or otherwise infringes on a constitutional guarantee. Accordingly, he fails to show any error to the state court's ruling under this portion of his claim.

### b. *Refusal to inform of penalty for manslaughter*

The petitioner argues that it was not "illegal for [the jury] to have a special charge or specific penalty for manslaughter read to them," and that there is a reasonable probability that they would have otherwise found Bilbo guilty of the lesser included offense. Doc. 1, att. 2, p. 15. The record reflects that the jury was instructed on manslaughter and negligent homicide as lesser included offenses for second degree murder. Doc. 19, att. 2, pp. 186–88. It was also informed that second degree murder carried a mandatory penalty of life imprisonment, but not of the sentencing range for either lesser included offense. *Id.* at 185–86. Therefore it did receive a special charge. The petitioner's claim relates only to the court's refusal to inform the jury of the penalty for manslaughter when requested to do so from a note sent to the court during deliberation.

Under federal law, "[i]t is well established that when a jury has no sentencing function, it should be admonished to reach its verdict without regard to what sentence might be imposed." *Shannon v. United States*, 114 S.Ct. 2419, 2424 (1994) (footnote and internal quotations removed).

> The jury's function is to find the facts and to decide whether, on those facts, the defendant is guilty of the crime charged. The judge, by contrast, imposes

> sentence on the defendant after the jury has arrived at a guilty verdict. Information regarding the consequences of a verdict is therefore irrelevant to the jury's task. Moreover, providing jurors sentencing information invites them to ponder matters that are not within their province, distracts them from their factfinding responsibilities, and creates a strong possibility of confusion.

*Id.* (citation omitted). A decision to deny the jury information on sentencing ranges is well supported under federal law, as set forth by the Supreme Court, and so the petitioner cannot show that the Louisiana Supreme Court's denial of relief on this portion of the claim was contrary to or involved an unreasonable application of that law. Bilbo therefore shows no right to habeas relief under this claim.

### 4. Ineffective assistance of counsel – failure to object to Judge's denial of jury's request for review of evidence and information on penalty for manslaughter

The petitioner also complains that his trial counsel was ineffective for "[failing] to lodge a timely objection to the court's refusal to grant a special instruction or to be further charged concerning the penalty for manslaughter." Doc. 1, att. 2, p. 16.

As discussed under Claim 3 above the jury was charged on manslaughter as a lesser included offense for second degree murder. The petitioner argues that the prejudice lies because (1) he might have obtained a reversal of his conviction based on the trial court's denial and (2) the jury was deprived of the information it requested. *Id.* at 17. For the reasons stated under Claim 2, we treat the April 2017 decision of the Louisiana Supreme Court, generally denying this claim for the petitioner's failure to satisfy *Strickland*, as the one under § 2254(d) review in this matter and consider it under the ineffective assistance standards described above.[8]

---

[8] The respondent again asserts that this claim is subject to procedural default. Doc. 19, att. 1, pp. 30–31. However, the state courts clearly relied on *Strickland* in addressing this claim. Moreover, as stated above under note 5, citation to Article 793, which does not apply to half of this claim, does not show a basis for procedural default.

As shown supra under Claim 3, the court had no discretion with respect to review of statements/testimony and any objection from counsel would not have achieved a different decision or preserved a basis for reversal on appeal. Furthermore, the request to review the coroner's wound chart was granted. Doc. 19, att. 2, p. 41. Accordingly, the only basis for an ineffective assistance claim is in trial counsel's alleged failure to object to the court's denial of the jury's request for information on the penalty for manslaughter.

As shown above the trial court correctly refused to give the jury requested information, i.e. the sentencing range for manslaughter, when that is an issue not properly considered during deliberation. This being the case then any objection lodged by counsel would have been meaningless and would have preserved nothing for appeal. Accordingly the petitioner cannot satisfy either of *Strickland*'s prongs. He therefore shows no error to the Louisiana Supreme Court's ruling and is not entitled to federal habeas relief under this claim.

## IV.
### CONCLUSION

Based on the foregoing, **IT IS RECOMMENDED** that the instant petition be **DENIED** and **DISMISSED WITH PREJUDICE**.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service shall bar an aggrieved party from attacking either the factual findings or the legal

conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

In accordance with Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue. *See* 28 U.S.C. § 2253(c)(2). A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

THUS DONE AND SIGNED in Chambers this 7th day of September, 2018.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE